**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| THE STATE OF LOUISIANA, et al., | |
| *Plaintiffs,* | Civ. No.: 2:25-CV-00071-JDC-TPL |
| v. | Judge: James D. Cain, Jr. |
| JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, et al., | Mag. Judge: Thomas P. LeBlanc |
| *Defendants,* | |
| and | |
| FRIENDS OF THE EARTH, et al., | |
| *Intervenor-Defendants.* | |

**<u>INTERVENOR-DEFENDANTS' MEMORANDUM IN SUPPORT OF 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

## INTRODUCTION

In this case, several states and two oil industry associations ask the Court to declare that two presidential memoranda issued in the waning days of the Biden Administration violate various constitutional and statutory provisions. And they likewise ask the Court to enjoin federal officials from enforcing those orders. Whatever the merits of those claims, they are now moot. Promptly upon taking office, President Trump issued an Executive Order to revoke both memoranda, and the Department of the Interior swiftly took steps to implement his intentions. As a result, any opinion this Court issued concerning the legality of the Biden memoranda would be an advisory opinion on a controversy that is no longer live, raised by parties that no longer possess an interest in the outcome. The Court lacks jurisdiction over this matter and should dismiss it as moot. *See* Fed. R. Civ. P. 12(c), (h)(3).

## BACKGROUND

On January 6, 2025, the Biden Administration issued two presidential memoranda withdrawing designated areas of the Outer Continental Shelf from disposition by oil and gas leasing under section 12(a) of the Outer Continental Shelf Lands Act, 42 U.S.C. § 1341(a). Plaintiffs commenced this action 11 days later, seeking a declaration that the memoranda violated the text of the Outer Continental Shelf Lands Act ("OCSLA") and several provisions of the United States Constitution, as well as an injunction barring officials of the Bureau of Ocean Energy Management from enforcing the memoranda. *See* Compl., ECF No. 1. To explain why they needed such relief, Plaintiffs pointed to the proceeds (or royalties and development benefits) they expected to collect as a result of OCSLA lease sales that, they claimed, otherwise would have taken place. *See* Compl. ¶¶ 17–23, 47–52.

On January 20, 2025, however, President Trump issued an Executive Order revoking both memoranda. *See* ECF No. 20-33. The memoranda were swiftly removed from the White

House's website. The Administration then took immediate steps to put the President's command into action. Promptly after he was confirmed, Interior Secretary Burgum issued an Order designed to "implement[], in relevant part" President Trump's Executive Order. Dkt. 20-33. The Secretary's Order, "effective immediately," "announce[d]" the revocation of President Biden's "withdrawals of the OCS from oil and gas leasing," ordered the heads of all Bureaus and Offices to communicate that withdrawal to their staff, and "instruct[ed] all Department Bureaus/Offices to take all actions available to expedite oil and gas leasing on the OCS." *Id.*

Friends of the Earth, Oceana, Surfrider Foundation, and Healthy Gulf ("Intervenors") moved to intervene in this action on March 3, 2025. ECF No. 20. The Court granted that motion on March 25, 2025. ECF No. 33. Intervenors now move to dismiss Plaintiffs' complaint for lack of subject-matter jurisdiction.

## STANDARD OF REVIEW

The party asserting a federal court's jurisdiction "constantly bears the burden of proof" to show that jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "The objection that a court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (citing Fed. R. Civ. P. 12(b)(1), (h)(3)). A jurisdictional defense "may be raised on a motion under Rule 12(c)," which serves "as an auxiliary device that enables a party to assert certain procedural defenses after the close of the pleadings." Wright & Miller § 1367. "[I]f a party raises an issue as to the court's subject matter jurisdiction on a motion for a judgment on the pleadings, the district judge will treat the motion as if it had been brought under Rule 12(b)(1)," *id.*, under which a court must dismiss a claim for lack of subject matter jurisdiction when it lacks the constitutional power to adjudicate the claim.

2

## ARGUMENT

**I.        President Trump's and Secretary Burgum's Actions Moot Plaintiffs' Claims**

Article III limits a federal court's jurisdiction to "cases and controversies." To invoke the jurisdiction of a federal court, "the party seeking relief must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *United States v. Juvenile Male*, 564 U.S. 932, 936 (2011) (per curiam) (cleaned up). That requirement persists "[t]hroughout the litigation." *Id.* "[I]t is not enough that a dispute was very much alive when suit was filed." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). If at any point the parties come to lack a "personal stake in the outcome of a lawsuit," the court lacks subject-matter jurisdiction and the matter should be dismissed as moot. *Id.* (cleaned up). Any decision a court might supply under those circumstances would be an "advisory opinion[] on abstract propositions of law," *Hall v. Beals*, 396 U.S. 45, 48 (1969), that "cannot affect the rights of litigants in the case before them," and thus falls outside the bounds of Article III, *Lewis*, 494 U.S. at 477 (citation omitted).

Generally, the withdrawal of a government policy renders a lawsuit challenging its legality moot. When the government rescinds, revokes, amends, or otherwise eliminates the challenged policy, "mootness is the default." *Freedom from Religion Found. v. Abbott*, 58 F.4th 824, 832 (5th Cir. 2023); *see also, e.g.*, *Houston Chronicle Publ'g Co. v. League City*, 488 F.3d 613, 619 (5th Cir. 2007) ("It goes without saying that disputes concerning repealed legislation are generally moot."); *U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666, 672 (5th Cir. 2023) (same as to rescinded regulation); *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) (same as to expired gubernatorial orders); *Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017) ("When a plaintiff's complaint is focused on a particular statute, regulation, or rule and seeks only prospective relief, the case becomes moot when the government repeals, revises, or replaces the

3

challenged law and thereby removes the complained-of defect."). That dismissal for mootness is the default rule in these circumstances "makes sense." *Spell*, 962 F.3d at 179. Unless the plaintiff seeks damages or other retrospective relief, the withdrawal of the challenged policy gives the plaintiff precisely what they were looking for. When a plaintiff secures by other means "the very relief their lawsuit sought," they have no remaining interest in the outcome of the litigation, and there is no live dispute for a court to decide. *Amawi v. Paxton*, 956 F.3d 816, 821 (5th Cir. 2020); *see also Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 240 (2024) ("Sometimes, events in the world overtake those in the courtroom, and a complaining party manages to secure outside of litigation all the relief he might have won in it.").

Courts in this circuit routinely apply this basic rule. For example, in *U.S. Navy SEALs*, the Fifth Circuit examined a challenge to a COVID-19 vaccination mandate implemented by the United States Navy, 72 F.4th at 669. The plaintiffs sought, and initially secured, an injunction prohibiting various federal officials from enforcing the offending policy on the grounds that it violated the U.S. Constitution. *Id.* at 670–71. But by the time the case arrived at the Fifth Circuit, the Navy had withdrawn its policy: Congress enacted a statute requiring the Secretary of Defense to rescind the mandate, and the Secretary of Defense issued a memorandum formally implementing the required rescission. *Id.* at 671. As the Fifth Circuit explained, those intervening events subjected the case to the "default rule" of mootness. *Id.* at 672. Because the "dispute" had "cease[d] mid-litigation," so too did the court's jurisdiction. *Id.* This Court reached the same conclusion in *Galey v. Biden*, No. 22-06203, 2025 WL 338309 (W.D. La. Jan. 29, 2025), explaining that just as a plaintiff's request to enjoin the mandate was mooted, so too was its claim for declaratory relief. *Id.* at *3. Declaratory relief was "unavailable" because the mandate had been rescinded with "no indication it will be reimposed." *Id.*

4

So it is here. Plaintiffs seek to enjoin various Bureau of Ocean Energy Management officials from enforcing the Biden Administration's withdrawal memoranda. *See* Compl. 23 (Prayer for Relief). But those officials have already been instructed, in no uncertain terms, that from the Department's perspective the Biden memoranda "have been revoked." ECF No. 20-33 at 1. Not only do they have the benefit of President Trump's Executive Order to that effect, but Secretary Burgum's subsequent order specifically notified them of the Executive Order, instructing the "heads of Bureaus and Offices"—the very officials Plaintiffs would otherwise enjoin—to communicate the Executive Order's effect to their staff and to "update Bureau and Office documents, websites, and policies to reflect this change." *Id.* In keeping with that directive, the Bureau's website lists none of the areas described in the Biden memoranda as withdrawn.[1] Plaintiffs thus have won "the very relief their lawsuit sought," *Amawi*, 956 F.3d at 821—and done so at a faster speed than the lawsuit ever could have attained. *See* Compl. 23 at ¶ f (Prayer for Relief). There is no additional relief that this Court could grant.

As to their request for a declaratory judgment on those issues, a similar conclusion applies. As this Court recently explained, the rescission of an offending policy "[l]ikewise" moots any parallel request for declaratory relief. *Galey*, 2025 WL 338309, at *3. Any declaratory judgment the Court could supply now would be an advisory opinion on no fewer than five "abstract propositions of law," *Hall*, 396 U.S. at 48, each supplied even though it "cannot affect the rights of litigants" before it, *C&H Nationwide, Inc. v. Norwest Bk. Tex. NA*, 208 F.3d 490, 493 (5th Cir. 2020) (citation omitted). Article III prohibits the Court from undertaking that academic exercise. If a dispute ceases to be a proper case or controversy, "the courts have no

---

[1] *Areas Under Restriction*, Bureau of Ocean Energy Management, https://www.boem.gov/oil-gas-energy/leasing/areas-under-restriction (last visited Apr. 10, 2025).

5

business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006).

**II.     No Exceptions to Mootness Apply**

To be sure, even the default rule that the rescission of a government policy moots an action challenging it has two important exceptions—but neither applies here. First, a defendant's "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citation omitted). Second, where an action is "capable of repetition, yet evading review," courts relax the rules of mootness to ensure that quick-expiring actions do not forever escape judicial review. *Yarls v. Bunton*, 905 F.3d 905, 911 (5th Cir. 2018) (citation omitted). There is no basis to apply either exception here.

**A.     Federal Defendants' Actions Manifest a Concrete Change in Policy.**

Start with voluntary cessation. As a general matter, a defendant's voluntary conduct moots a case only if "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Freedom from Religion Found.*, 58 F.4th at 833 (quoting *Sossamon v. Texas*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd on other grounds sub nom.*, 563 U.S. 277 (2011)). But as the Fifth Circuit has repeatedly emphasized, if the party that voluntarily ceased the challenged practice is a government entity, a different analysis applies. When government officials make "formally announced changes to official governmental polic[ies]," courts in this circuit presume that those changes are undertaken in "good faith" and not intended to be promptly undone. *Sossamon*, 560 F.3d at 325; *see also, e.g.*, *Freedom from Religion Found.*, 58 F.4th at 833.

The Fifth Circuit presumes good faith for a good reason. The voluntary cessation exception is intended to prevent defendants from "litigation posturing"—strategically halting a

6

course of unlawful conduct in order to have the case against them declared moot, then picking up where they left off, and "repeating th[e] cycle until" they achieve their unlawful ends. *Spell*, 962 F.3d at 179; *see also Yarls*, 905 F.3d at 910 ("Essentially, the goal is to determine whether the defendant's actions are 'litigation posturing' or whether the controversy is actually extinguished."). But when the defendant is a state actor formally announcing a change in government policy, that concern is unlikely to materialize. Courts are "justified" in treating formal governmental cessation "with some solicitude" because state actors are "public servants, not self-interested private parties." *Sossamon*, 560 F.3d at 325. Absent evidence to the contrary, their "formally announced changes to official government policy are not mere litigation posturing" and do not forestall a conclusion of mootness. *U.S. Navy SEALs*, 72 F.4th at 674 (quoting *Yarls*, 905 F.3d at 911). All this means that even if the government could theoretically change its mind again, that would not "change the mootness calculus." *Id.* "It is black-letter law that the government's mere 'ability to reimplement the statute or regulation at issue,'" *id.* (quoting *Freedom from Religion Found.*, 58 F.4th at 832), is "'not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists,'" *id.* (quoting *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997).

      Under these well-worn principles, the voluntary cessation exception to mootness cannot apply here. There is no evidence that the Trump Administration's efforts to rescind the prior administration's memoranda are a gambit to avoid litigation. To the contrary, there is every indication that the impetus for that action was a firm and unwavering commitment to expanded energy exploration on the outer continental shelf. President Trump said so himself: The very same day the outgoing administration announced its plans, President Trump vowed to "unban"

7

development in the affected regions.[2] One day later, he promised to take that action on "day one."[3] When, on taking office, he took steps to do just that, there is no reason to think that he was somehow motivated by—or even aware of—a lawsuit filed just one business day earlier.

All the more so because his commitment to expanding offshore energy exploration was nothing new. As long ago as 2017, at the very outset of his first term, President Trump signed an executive order adopting an "America-First Offshore Energy Strategy" that included "encourag[ing] energy exploration … on the Outer Continental Shelf."[4] The Administration pursued that project with gusto, seeking information about leasing on offshore tracts across all 26 outer continental shelf planning regions, 82 Fed. Reg. 30886 (July 3, 2017), and proposing lease sales across many of them, 83 Fed. Reg. 829, 830–01 (Jan. 8, 2018). President Trump's efforts to rescind the memoranda at issue here on regaining office simply pick up where he left off. The same intent is manifest in Secretary Burgum's directive requiring the Department of Interior to remove all refences to the challenged memoranda and (going a step further) directing "all Department Bureaus/Offices to take all actions available to expedite oil and gas leasing on the OCS."  ECF No. 20-33. If any actions warrant the "presumption" that public officials acted with a "good faith" commitment to a different course, they are these. *Yarls*, 905 F.3d at 911 (citation omitted).

---

[2] Aubrie Spady, *Trump plans to 'immediately' reverse Biden's 'ridiculous' ban on new oil and gas drilling along US coast*, Fox News (Jan. 6, 2025), https://www.foxnews.com/politics/trump-plans-reverse-bidens-ban-oil-gas-drilling-us-coast.

[3] Ivan Pereira, *Trump claims Biden blocking his agenda at the last-minute. Policy experts weigh in*, ABC News (Jan. 11, 2025), https://abcnews.go.com/Politics/trumpclaims-biden-blocking-agenda-minute-policy-experts/story?id=117562473.

[4] *See* Exec. Order No. 13795, 82 Fed. Reg. 20815 (May 3, 2017), https://www.govinfo.gov/content/pkg/FR-2017-05-03/pdf/2017-09087.pdf.

### B.  No Exceptional Circumstances are Present Here.

The "capable of repetition, yet evading review" exception does not apply here either. That exception applies only when "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Id*. (citation omitted). These are "exceptional situations" that are few and far between. *Empower Texans, Inc. v. Green*, 977 F.3d 367, 370 (5th Cir. 2020). And they certainly are not present here. No time constraints preclude the full litigation of any challenge Plaintiffs might bring to presidential memoranda like those at issue here. *See id.* Nor is there any reasonable expectation of recurrence given the new Administration's commitment to Plaintiffs' preferred policies.

Finally, even if the Court were inclined to conclude that the speculative prospect of recurrence means that Plaintiffs' claims "technically" are not moot, the Court still lacks subject-matter jurisdiction because Plaintiffs' claims "are not ripe." *Ammex, Inc. v. Cox*, 351 F.3d 697, 706 (6th Cir. 2003). An event that "may not occur as anticipated, or indeed may not occur at all," is "merely abstract or hypothetical, and thus too speculative to be fit for judicial review at this time." *Lopez v. City of Houston*, 617 F.3d 336, 342 (5th Cir. 2010). If or when that changes, Plaintiffs can refile their suit. *See, e.g.*, *Staley v. Harris County*, 485 F.3d 305, 309 (5th Cir. 2007) (en banc).

*    *    *

The fact that President Trump's revocation is presently being challenged as *ultra vires* in separate litigation does not change the mootness analysis. *See*, *N. Alaska Env't Ctr. v. Trump*, 25-00038 (D. Alaska filed Feb. 19, 2025), Doc.1. There is no special exception to the mootness doctrine simply because there is pending litigation, somewhere in the court system, that could someday result in the resurrection of a policy that the government has purposefully and

9

emphatically interred. Just the opposite. Where a policy or decision is presently in force, "the possibility that [it] may be invalidated is nothing more than speculation." *Chamber of Com. v. EPA*, 642 F.3d 192, 208 (D.C. Cir. 2011). *See also id*. at 207–208 (holding case moot and rejecting argument that pending court case constituted a "continuing threat" because "the prospect that litigants could be injured 'if' a court were someday to invalidate the federal regulations … is little different from the prospect that any litigant could be injured 'if' EPA (or Congress) were eventually to enact a rule it presently had under consideration"); *see also Freedom from Religion Found.*, 58 F.4th at 834 (speculation that a policy may recur insufficient to avoid mootness). But until or unless that prospect comes to pass, the status quo has given Plaintiffs what they seek, and there is no relief the Court can presently grant. If that should change, this Court's dismissal for mootness will be without prejudice. Plaintiffs are free to refile their dispute if it becomes live again. *See id.* (if "speculation" as to the recurrence of an offending policy proved correct, plaintiff was "in no way precluded from filing a new lawsuit").

## CONCLUSION

The Court should dismiss this case as moot.

Respectfully submitted this 14th day of April, 2025.

/s/ Lauren E. Godshall
Lauren E. Godshall, La. Bar. No. 31465
Earthjustice
1505 Colony Place
Metairie, LA 70003
T: 773-828-0836
lgodshall@earthjustice.org

/s/ Stephen D. Mashuda
Stephen D. Mashuda (admitted *pro hac vice*)
Earthjustice
810 Third Avenue, Suite 610

10

Seattle, WA 98104
T: 206-343-7340
smashuda@earthjustice.org

 /s/ *Brettny Hardy*
Brettny Hardy (admitted *pro hac vice*)
Earthjustice
50 California Street, Suite 500
San Francisco, CA 94111
T: 415-217-2000
bhardy@earthjustice.org

 /s/ *Benjamin P. Chagnon*
Benjamin P. Chagnon (admitted *pro hac vice*)
Earthjustice
1001 G Street NW, Suite 1000
Washington, D.C. 20001
T: 202-745-5210
bchagnon@earthjustice.org

*Counsel for Intervenor-Defendants Friends of the Earth, Healthy Gulf, Oceana, Surfrider Foundation*

11