**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WESTERN LOUISIANA
LAKE CHARLES DIVISION**

| | |
|---|---|
| STATE OF LOUISIANA, *et al.*, | Hon. Judge James D. Cain, Jr. |
| Plaintiffs, | Hon. Magistrate Judge Thomas P. LeBlanc |
| v. | Case No. 2:25-cv-71 |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | |
| Defendants, | **DEFENDANTS' OPPOSITION TO INTERVENOR-DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| and | |
| FRIENDS OF THE EARTH, *et al.*, | |
| Intervenor-Defendants. | |

## INTRODUCTION

The Court should deny Intervenor Defendants Friends of the Earth *et al.*'s (the "Environmental Groups") motion to dismiss this case as moot.  Although President Trump has rescinded the challenged withdrawals of areas on the outer continental shelf ("OCS"), the exceptions to mootness for actions that are capable of repetition yet evading review and voluntary cessation apply because the challenged withdrawals may recur.  Several of the Environmental Groups who have intervened in this case also have brought suit in the District of Alaska, where they seek to reverse President Trump's decision and reinstate the withdrawals at issue here.  Should that happen, the issues in this case would be indisputably live.  Therefore, this Court should deny the motion to dismiss.  Alternatively, the Court may hold this case in abeyance pending the outcome of district court proceedings in the Alaska case.

## BACKGROUND

On January 6, 2025, then President Biden issued two memoranda withdrawing certain areas of the OCS from potential oil and gas leasing.  The first withdrew areas of the OCS off the coast of Alaska.  *See* Withdrawal of Certain Areas of the United States OCS from Oil or Natural Gas Leasing, 90 Fed. Reg. 6,739 (Jan. 6, 2025).  And the second withdrew areas off the East Coast, West Coast, and within the Gulf of America.  *See* Withdrawal of Certain Areas of the United States OCS from Oil and Natural Gas Leasing, 90 Fed. Reg. 6,743 (Jan. 6, 2025).  On January 17, 2025, Plaintiffs—which include Gulf states, the Gulf Energy Alliance, and the State of Alaska—brought suit alleging that President Biden's withdrawals were invalid because the delegation in section 12(a) of the Outer Continental Shelf Lands Act ("OCSLA") violated the non-delegation doctrine, the withdrawals exceeded the President's authority under the Property

Clause of the U.S. Constitution, and the withdrawals exceeded the President's authority under OCSLA. *See generally* Compl. ECF No. 1.[1]

Upon taking office, on January 20, 2025, President Trump issued an executive order rescinding President Biden's withdrawals. *See* Exec. Order No. 14148 § 2(vvv), (www), Initial Rescissions of Harmful Executive Orders and Actions, 90 Fed. Reg. 8,237, 8,240 (Jan. 20, 2025) ("2025 Order"). A month later, a coalition of environmental groups, including three of the Environmental Groups who have intervened in this case, sued in the District of Alaska challenging that rescission. *See* Compl., *N. Alaska Envtl. Ctr. v. Trump*, No. 3:25-cv-38 (D. Alaska Feb. 19, 2025), ECF No. 1 ("*NAEC* Compl."). The plaintiffs in that case allege that President Trump's rescission of President Biden's withdrawals violates the Constitution and is *ultra vires* because, in their view, section 12(a) of OCSLA allows a president to withdraw areas of the OCS, but not to modify or eliminate previously withdrawn areas. *See id.* ¶¶ 77-88. They ask the court to invalidate the rescission and to enjoin the Secretary of the Interior and the Secretary of Commerce from enforcing it. *See id.* at 42-43 (Prayer for Relief). Defendants' response to the complaint in that case is currently due May 26, 2025.

Many of the same environmental groups are also involved in another Alaska case—which they initiated during President Trump's first term—where they challenged an executive order by President Trump reversing an earlier withdrawal by President Obama. *See* Exec. Order No. 13795, Implementing an America-First Offshore Energy Strategy, 82 Fed. Reg. 20,815 (Apr. 28, 2017) ("2017 Order"). On summary judgment, the court in that case concluded that President Trump lacked authority under section 12(a) of the OCSLA, 43 U.S.C. § 1340(a), to reverse

---

[1] A parallel case challenging the second withdrawal was brought by the State of Texas and an oil and gas production company in the Eastern District of Texas. *See* Compl., *Texas v. Trump*, No. 9:25-cv-10 (E.D. Tex. Jan. 20, 2025), ECF No. 1.

President Obama's withdrawal of areas on the OCS, and it vacated the relevant portion of the 2017 Order. *See League of Conservation Voters v. Trump*, 363 F. Supp. 3d 1013, 1030-31 (D. Alaska 2019), *vacated as moot and remanded*, 843 F. Appx. 937 (9th Cir. 2021). On appeal, the district court's order was vacated as moot following President Biden's issuance of an executive order rescinding the 2017 Order. *See* Exec. Order No. 13990, Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis, 86 Fed. Reg. 7,037 (Jan. 20, 2021); *see also* Order of Dismissal, ECF No. 96.

President Trump's 2025 Order also rescinded other actions by President Biden to enact or reinstate OCS withdrawals, including Executive Order No. 13990. *See* Exec. Order No. 14148 §§ 2(f), (ccc). By rescinding Executive Order No. 13990, the 2025 Order again reversed the OCS withdrawals at issue in the *League of Conservation Voters* case. *See id.* § 2(f).[2] Plaintiffs in that case have filed a Rule 60(b) motion asking the court to reinstate its prior summary judgment order. *See* Pls.' Rule 60(b)(6) Motion, *League of Conservation Voters v. Trump*, No. 3:17-cv-101-SLG, ECF No. 99 (D. Alaska Feb. 19, 2025) ("*LCV* Rule 60(b)(6) Motion"). Federal Defendants and Defendant-Intervenors opposed that motion. *See League of Conservation Voters*, ECF Nos. 110, 111 & 112. The court has not yet ruled on the motion.

## LEGAL STANDARD

Pursuant to Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion

---

[2] Some areas of the OCS off of Alaska, in the Atlantic Ocean, and in the Gulf of America remain withdrawn based on a December 16, 2014 memorandum issued by President Obama and two memoranda issued by President Trump in September 2020. *See* https://www.boem.gov/oil-gas-energy/leasing/areas-under-restriction (last visited Apr. 28, 2025). The area of the Gulf of America that remains withdrawn is the same as the area of the Gulf identified in President Biden's January 6, 2025 Memorandum. *See* 90 Fed. Reg. at 6,743-45.

brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.,* 914 F.2d 74, 76 (5th Cir. 1990)). "Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Great Plains*, 313 F.3d at 312 (citation omitted). If jurisdictional issues are raised in a Rule 12(c) motion, a court will treat the motion as one filed under Rule 12(b)(1). *See Jehle v. PSC Group LLC*, No. 22-3836, 2023 WL 3377142, at *1 (E.D. La. May 11, 2023). On a Rule 12(b) motion, the party asserting jurisdiction bears the burden of proof. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

## ARGUMENT

### I.    The Case Is Not Moot Due to the Exceptions for Actions that Are Capable of Repetition, Yet Evading Review, and Voluntary Cessation

The case is not moot because the action that is challenged here—the withdrawal by President Biden of large areas of the OCS from oil and gas leasing—may well be repeated, either as a result of ongoing litigation or through action by a subsequent President. While arguing that this case is moot, the Environmental Groups are simultaneously pressing a court in the District of Alaska to effectively reinstate the withdrawals challenged in this case. If they are successful, the actions challenged in this case would again be in effect. Therefore, the mootness exceptions for actions capable of repetition, yet evading review, and voluntary cessation preclude dismissal here.

Article III limits the jurisdiction of courts to decide live cases and controversies. *Freedom from Religion Found., Inc. v. Abbot*, 58 F.4th 824, 831 (5th Cir. 2023). "[A] dispute is

no longer live when 'the parties lack a legally cognizable interest in the outcome." *Id.* (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). "There must be a case or controversy through all stages of a case—not just when a suit comes *into* existence but *throughout* its existence." *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) (citation omitted and internal quotation marks omitted). Thus, "any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *Freedom from Religion*, 58 F.4th at 831-32 (quoting *DeOtte v. Nevada*, 20 F.4th 1055, 1064 (5th Cir. 2021)) (internal citation omitted).

There are well-established exceptions to mootness, one being for matters that are capable of repetition, yet evade review. "This exception applies where '(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666, 675 (5th Cir. 2023) (quoting *Empower Texans, Inc. v. Geren*, 977 F.3d 367, 370 (5th Cir. 2020)). "The *repetition* prong of this exception requires that there be some possibility that the challenged conduct will be repeated and affect the plaintiff. The *evading review* prong of the exception requires that the type of harm be of limited duration so that it is likely to be moot before litigation is completed." *Vieux Carre Prop. Owners, Residents & Assocs., Inc. v. Brown*, 948 F.2d 1436, 1447 (5th Cir. 1991) (citations omitted).

The exception applies here because President Biden's OCS withdrawals were in place for too short a time to be litigated, and there is a reasonable expectation that the withdrawals will be reinstated. First, the challenged withdrawals had been in place for only two weeks—from January 6 to 20, 2025—when they were rescinded by President Trump. *See* 2025 Order, 90 Fed.

Reg. at 8,240.  There was not sufficient time within that two-week period to fully litigate the withdrawals.  And this situation is not unusual; President Obama withdrew multiple areas of the OCS from development near the end of his administration, only to have President Trump nullify those withdrawals a few months later.[3]  *See* Exec. Order No. 13795 § 5.  Generally speaking, actions taken by presidents under OCSLA 12(a) near the end of their presidency, and which are overturned by a subsequent administration, are likely to evade judicial review absent an exception to the mootness doctrine. *See Catholic Leadership Coal. of Texas v. Reisman*, 764 F.3d 409, 420-22 (5th Cir. 2014) (finding that a provision in Texas law requiring a 60-day waiting period would evade review because the case could not be fully resolved within 60 days).

Second, there is a reasonable expectation that Plaintiffs could be subject to the same action again.  The most immediate likely recurrence would be due to the ongoing litigation in the District of Alaska.  The plaintiffs in that case seek to invalidate President Trump's rescission of the OCS withdrawals.  *See NAEC* Compl. at 42-43.  If those plaintiffs succeed, that will have the effect of nullifying President Trump's rescission of President Biden's withdrawals challenged in this action.  And there is reason to believe that, at least at the district court level, the Environmental Groups will achieve that result because the same district court ruled in *League of Conservation Voters* that President Trump lacked the authority under OCSLA to reverse prior OCS withdrawals issued by President Obama.  *See* 363 F. Supp. 3d at 1030-31 (vacating the relevant portion of President Trump's 2017 Order).  Thus, while the Environmental Groups are correct that the mere existence of pending litigation that could someday resurrect a rescinded

---

[3] Even if the withdrawal is in place for longer than a few weeks, it may still evade review because it may take years for the issue to be resolved by the appellate courts.  That is precisely what occurred in the *League of Conservation Voters* case, which was pending for several years before it was dismissed as moot by the Ninth Circuit.  *See League of Conservation Voters*, 843 F. Appx. at 939.

government policy is insufficient to satisfy the second prong of the "capable of repetition" exception, *see* Int.-Defs.' Mem. in Supp. of 12(c) Mot. for Judgment on the Pleadings at 9, ECF No. 36-1, the facts here are far more compelling.  Therefore, the exception for actions that are capable of repetition, yet evading review applies, and the case is not moot.

A second exception for voluntary cessation also applies to avoid mootness here.  "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000)) (internal citation omitted).  "In general, a defendant's voluntary conduct moots a case only if 'it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Freedom From Religion*, 58 F.4th at 833 (quoting *Sossamon v. Texas*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd* 563 U.S. 277 (2011)).  "But government entities bear a lighter burden . . . in proving that the challenged conduct will not recur once the suit is dismissed as moot." *Freedom From Religion*, 58 F.4th at 833 (quoting *Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir. 2014)) (quotation marks and internal citation omitted). "That is so because we presume that state actors, as public representatives, act in good faith." *Freedom From Religion*, 58 F.4th at 833; *see also U.S. Navy Seals*, 72 F.4th at 674.

In analogous circumstances, some courts have declined to dismiss a case as moot under the voluntary cessation exception where ongoing litigation threatened to reverse the federal action superseding the challenged action.  For example, the Sixth Circuit ruled that a challenge to a Clean Water Act rule issued by the U.S. Environmental Protection Agency ("EPA") remained live, even though the EPA had repealed the rule, because there was the potential that the repeal could be reversed in ongoing litigation.  *See Ohio v. U.S. Envtl. Prot. Agency*, 969 F.3d 306, 310

(6th Cir. 2020). As the Sixth Circuit explained, whether the conduct is "'reasonably' likely to recur means that there must be a fair prospect that the conduct will recur in the foreseeable future." *Id.* That fair prospect is present here because the plaintiffs in the *Northern Alaska Environmental Center* case in the District of Alaska seek to reverse President Trump's rescission of the withdrawals.

The challenged action could also recur if a subsequent President were to reverse President Trump's rescission of the challenged withdrawals. At least one court has found a similar argument persuasive in the context of presidential action. *See Indigenous Envtl. Network v. Trump*, 541 F. Supp. 3d 1152, 1158 (D. Mont. 2021). In that case the court applied the voluntary cessation exception to a challenge to President Trump's permit for a pipeline border crossing, despite the fact that President Biden had already revoked the challenged permit. *Id.* The court explained that, "[a]lthough President Biden revoked the 2019 Permit, the possibility remains that he, or a future president, could issue unilaterally another permit." *Id.* Moreover, such an action by a future president "would require no approval, no process, no examination, and could be performed without warning." *Id.* Therefore, the plaintiffs had "raised reasonable fears" that the challenged action could be repeated, and the mootness exception applied. *Id.* at 1159.

The same thing could very well occur with respect to President Biden's withdrawals. If the court dismisses the case as moot, the withdrawals could readily be reinstated in a subsequent administration. Indeed, the ongoing litigation in the District of Alaska over withdrawals by President Obama demonstrates the point. President Trump's revocation of those earlier withdrawals in 2017 formed the basis for the *League of Conservation* suit filed by many of the same environmental groups who seek to intervene here. Despite the fact that the case was dismissed as moot by the Ninth Circuit in 2021 when President Biden took office, *League of*

*Conservation Voters*, 843 F. Appx. at 939, the plaintiffs are now claiming that the case is no longer moot due to President Trump's 2025 Order and that the court's prior summary judgment ruling in that case should be reinstated.  *See LCV* Rule 60(b)(6) Motion.  Although the plaintiffs in that case challenge a rescission of a withdrawal (not a withdrawal), it serves to demonstrate that these types of presidential actions regarding areas of the OCS, and challenges to them, are likely to recur.[4]

Accordingly, the Court should decline to dismiss the case as moot.

## II.    Alternatively, the Court May Stay This Case Pending the Outcome of the Litigation in the District of Alaska

Alternatively, rather than outright denying the Environmental Groups' motion to dismiss the case, the Court may stay this case pending the outcome of at least the district court proceedings in the *Northern Alaska Environmental Center* case in the District of Alaska, which challenges President Trump's rescission of the withdrawals at issue here.  This Court has the authority to stay a case to serve the interests of justice and judicial economy.  *See In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990).  A stay would serve those interests by allowing the parties to continue the litigation if the Environmental Groups obtain a favorable ruling in the District of Alaska regarding President Trump's rescission of the withdrawals.

## CONCLUSION

For the reasons set forth above, the Court should deny Plaintiffs' motion and set a schedule for the briefing of the merits.  Alternatively, the Court may stay the case pending the outcome of the litigation in the District of Alaska.

Respectfully submitted this 12th day of May 2025.

---

[4] Federal Defendants do not concede that the *League of Conservation Voters* case is no longer moot and have argued in that case that, if the plaintiffs wish to challenge President Trump's 2025 Order, they should do so through an amended complaint or in a new case.  Defendants also do not concede that the *League of Conservation* case is jurisdictionally sound.

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment and Natural Resources Division

/s/ *Luther L. Hajek*
LUTHER L. HAJEK
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
999 18th Street
South Terrace – Suite 370
Denver, CO 80202
Telephone: (303) 844-1376
Facsimile: (303) 844-1350
Email: luke.hajek@usdoj.gov

*Counsel for Federal Defendants*